This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Renee Bever, appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division, that granted legal custody of her daughter, Julie Woodburn, to the child's paternal grandparents. We affirm.
 I.
Ms. Bever is the mother of four children: Nikita Bever, born March 23, 1992, Jacob Odea, born June 12, 1993, Julie Woodburn, born October 19, 1995, and Fatima Larson, born March 21, 2000. On June 3, 1999, Nikita was taken into custody by the Akron Police, pursuant to Juv.R. 6, after she disclosed that her mother had beaten her with a belt. On June 4, 1999, the Summit County Children Services Board ("CSB") filed a complaint which alleged that Nikita was an abused and dependent child and that her siblings, Jacob and Julie, were dependent children. The complaint stated that Nikita had bruises on her body, from her neck down to her legs. CSB was awarded emergency temporary custody of the children.
CSB developed a case plan for Ms. Bever which required her to submit to a psychological/psychiatric evaluation and complete a parenting program so that she could provide the children with an emotionally safe and stable home. On September 2, 1999, following a hearing on the matter, the magistrate determined that Nikita was an abused and dependent child and that Jacob and Julie were dependent children. On November 18, 1999, the trial court adopted the magistrate's findings. The three children were placed in the temporary custody of CSB. Julie was then placed with paternal grandparents, Margaret and Lester Woodburn (hereinafter collectively referred to as "the Woodburns").
On May 16, 2000, the Woodburns filed a motion to obtain legal custody of Julie. On June 28, 2000, Ken Woodburn, the father of Julie, also filed a motion for legal custody. On August 9, 2000, Michelle Miller, maternal grandmother filed a motion for custody. Also on that date, CSB filed a motion for the court to award legal custody to Julie's paternal grandparents, the Woodburns.
On January 30, 2001, following a legal custody hearing, the magistrate ruled that legal custody of Julie should be awarded to the paternal grandparents. On February 13, 2001, Ms. Bever filed objections to the magistrate's decision, stating that it was error for the magistrate to admit into evidence the psychological evaluation report of Ms. Bever, as it violated the patient-counselor privilege. On July 25, 2001, the trial court overruled the objections, holding that, while it was error to admit the psychological evaluation as such communications were privileged, such error was not prejudicial. The trial court then adopted the magistrate's order.
 II.
Ms. Bever appeals and raises two assignments of error:
 A. First Assignment of Error THE TRIAL COURT CORRECTLY RULED THAT THE MAGISTRATE COMMITTED ERROR IN ADMITTING INTO EVIDENCE COMMUNICATIONS BETWEEN MOTHER AND HER THERAPIST AT PORTAGE PATH MENTAL HEALTH CENTER, HOWEVER, THE TRIAL COURT ERRED IN FINDING THE MAGISTRATE'S ERROR TO BE HARMLESS.
Ms. Bever asserts that the trial court erred when it ruled that a magistrate's decision to admit certain evidence was an erroneous decision but not a prejudicial error. Ms. Bever contends that the trial court erred in ruling that such error was not prejudicial, despite the fact that the magistrate should not have admitted into evidence the report of the psychological evaluation of Ms. Bever. Ms. Bever avers that the error was in fact prejudicial, as both the magistrate's and the trial court's decisions were based on the confidential information contained in the evaluation. We disagree.
When reviewing an appeal from a trial court's adoption of a magistrate's decision under Juv.R. 40, we must determine whether the trial court abused its discretion in adopting the decision. In re JeremyK. (July 27, 2001), Erie App. No. E-00-051, unreported, 2001 Ohio App. LEXIS 3325, at *7. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency," Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621, or an arbitrary, unreasonable, or unconscionable attitude, Schafer v. Schafer (1996), 115 Ohio App.3d 639,642. "Any claim of trial court error must be based on the actions of the trial court, not on the magistrate's findings or proposed decision."Mealey v. Mealey (May 8, 1996), Wayne App. No. 95CA0093, unreported, at 5; see, also, In re Dinapoli (Sept. 18, 1996), Summit App. No. 17691, unreported, at 2. Consequently, the focus in this assignment of error is on the trial court's actions and not the actions of the magistrate.
In the case at bar, the magistrate admitted Ms. Bever's Portage Path mental health records and the testimony of Chris DeGasperis, who works at the Protective Services Unit of Summit County Children Services, regarding the information learned from Ms. Bever's Portage Path therapist. In reaching its decision, the trial court determined that such communications and records were privileged but found that such error was not prejudicial. Thereafter, the court conducted an independent review of the evidence. Ms. Bever argues that the trial court's decision is still based on privileged information provided by Mr. DeGasperis. However, upon reviewing the trial court's judgment entry, we find that the trial court makes no reference to the evidence that it determined was privileged; rather, the court only refers to the portions of Mr. DeGasperis' testimony that were either based on personal knowledge or the stated goals of the CSB case plan.
While the magistrate's decision might refer to material that the trial court determined to be privileged, nonetheless, as noted previously, the proper focus of this assignment of error is on the actions of the trial court. Accordingly, as the trial court conducted an independent review of the evidence and did not base its decision on the evidence that it determined to be privileged, we conclude that the trial court did not abuse its discretion in adopting the magistrate's decision. The first assignment of error is overruled.
 B. Second Assignment of Error THE DECISION OF THE TRIAL COURT AWARDING LEGAL CUSTODY OF THE MINOR CHILD, JULIE WOODBURN, TO HER PATERNAL GRANDPARENTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Ms. Bever asserts that the trial court erred in awarding legal custody to the Woodburns, as the state failed to establish, by a preponderance of the evidence, that legal custody of Julie should be granted to her paternal grandparents, rather than her mother. We disagree.
R.C. 2151.353(A) governs the dispositional alternatives authorized for a child who has been adjudicated dependent, providing, in part that "[i]f a child is adjudicated [a] * * * dependent child, the court may * * * [a]ward legal custody of the child to either parent or to any otherperson who, prior to the dispositional hearing, files a motion requestinglegal custody of the child[.]" (Emphasis added.) Accordingly, once the trial court has adjudicated a child dependent, the court may award legal custody of the child to either parent or to a non-parent upon a timely motion. See R.C. 2151.353(A)(3).
In the present case, the trial court awarded legal custody to a non-parent, the Woodburns. Significantly, in a child custody proceeding between a parent and a non-parent, the trial court must make an initial determination finding the parent unsuitable prior to awarding custody to the non-parent. In re Perales (1977), 52 Ohio St.2d 89, syllabus. In making its determination as to the unsuitability of the parent, the trial court must find by a preponderance of the evidence at bar: (1) the parent abandoned the child; (2) the parent contractually relinquished custody of the child; (3) the parent has become totally incapable of supporting or caring for the child; or (4) an award of custody to the parent would be detrimental to the child. In re Adams (Oct. 31, 2001), Wayne App. No. 01CA0026, unreported, at 2, citing In re Perales, 52 Ohio St.2d at syllabus. Such a determination must not be against the manifest weight of the evidence.
When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), Summit App. No. 18983, unreported, at 3. In determining whether a criminal conviction is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175.
After Julie's sister, Nikita, disclosed that she was beaten with a belt by her mother and was taken into custody by the Akron Police on June 3, 1999, CSB was awarded emergency temporary custody of Ms. Bever's children. CSB's case plan called for Ms. Bever to submit to a psychological/psychiatric evaluation and complete a parenting program. On November 18, 1999, the trial court adopted the magistrate's finding that Julie was a dependent child, pursuant to R.C. 2151.04. CSB placed Julie with the Woodburns, who filed a motion to obtain legal custody of Julie on May 16, 2000.
At trial, Sue Wheeler, a psychiatric social work supervisor, testified that, in her therapy sessions, Julie spoke about physical abuse by Ms. Bever and her ex-boyfriend, Erik Larson. Julie told Ms. Wheeler that she had been hit with a belt and purse strap and had been pushed down stairs. She also told Ms. Wheeler that, with Mr. Larson present, she had seen movies "related to people licking each other or licking in the private parts." When discussing Nikita with Ms. Wheeler, Julie described seeing her sister masturbate. Ms. Wheeler testified that Julie had expressed a desire to either live with the Woodburns or her father's girlfriend. Julie told Ms. Wheeler that she did not want to go back to her mother because she was afraid that Ms. Bever would resume hurting her.
Mr. DeGasperis testified as to the objectives of Ms. Bever's case plan. He explained that such objectives included parenting classes, a psychological assessment, an anger-management course, and procuring safe, stable housing. He further stated that Ms. Bever had cooperated with CSB and completed all of her case plan objectives.
Mr. DeGasperis also testified as to his concern over Ms. Bever's continued relationship with Mr. Larson. He stated that, despite the children's allegations of sexual misconduct by Mr. Larson and Mr. Larson's child endangerment conviction, approximately six weeks before the trial date, he realized that Mr. Larson was using Ms. Bever's address as his own for his child support enforcement address and his house arrest. Mr. DeGasperis testified that it was his opinion that Ms. Bever minimized what happened to her children and that, in his interaction with her, she tended to focus on things other than her children.
Mr. DeGasperis testified that Ms. Bever acts appropriately during visits with her children at the visitation center, but, based on his personal observations, he feels that there is no bond or emotion between Ms. Bever and Julie. He testified to an instance where Ms. Bever forgot it was Julie's birthday during a scheduled visit. He added, however, that Ms. Bever acknowledged the birthday the following week and tried to make up for her mistake. Mr. DeGasperis testified that, based on his conversation with Julie, she does not want to live with her mother. He stated that Julie was happy living with the Woodburns. He also testified that everything was appropriate in the Woodburn house and that Julie was doing well in her school. He felt that it was in Julie's best interest to live with the Woodburns and that it would be detrimental to remove her at this time.
Margaret Woodburn, Julie's paternal grandmother, stated that Julie had been placed with her and her husband for approximately one year. Prior to such placement, Julie had already lived with them for approximately eight months. Ms. Woodburn testified that Julie is doing well in her school and that she often has interaction with her father, Ken Woodburn, who calls almost everyday and visits most weekends. Ms. Woodburn expressed the importance of Julie maintaining a relationship with her brother and sisters. She also stated that she would comply with any court orders for Julie to visit Ms. Bever. Ms. Woodburn testified that, since Julie has been living with her and her husband, Julie has continued therapy and no longer acts out sexually or has nightmares.
Ms. Bever testified that she has lived in an Akron Metropolitan Housing Authority apartment and has worked full-time at Citgo for approximately one year. She also stated the she completed a tax course at HR Block and hopes to be employed part-time on a seasonal basis. Ms. Bever testified that she completed both the anger-management and parenting classes as requested by CSB. Additionally, she stated that she continues to seek therapy.
Ms. Bever related that she has ended her relationship with Mr. Larson. She explained that she only maintained contact because of their baby, Fatima. She also explained that she let him live in the house during his house arrest to be a nice person and that he has since moved out. Ms. Bever testified that she believes that all three of her children lied when they suggested that they have been sexually abused. She further testified that, when Julie described watching pornographic movies with Mr. Larson, Julie was just saying what was "planted into her head[.]" When asked why her son Jacob told a similar story, Ms. Bever still denied that such movies were shown to the children. Ms. Bever stated that, despite the fact that all three children individually talked about being hit by Ms. Bever's purse straps, she only spanked the children with her hand, and, further, the children only said such things "because they're too afraid to say who did hit them." Ms. Bever then clarified that, with regard to Julie, no one had ever hit Julie and stated that, when Julie says she was hit by Ms. Bever with her purse straps, "she is lying."
Ken Woodburn, Julie's father, testified that he had a good relationship with Julie and saw her often when he visited his parent's house. He reported that his marriage to Ms. Bever had been a violent relationship and that the police had been called twice over domestic violence problems while he was living with her. Tia Kroeger, the guardian ad litem, reported that Julie was thriving in her current home and school. Though Julie used to be a fearful child, Ms. Kroeger felt that now her nightmares are subsiding and she is acting more like a typical child. Ms. Kroeger testified that Julie has been very adamant in her desire to continue to live with the Woodburns and to not return to her mother. Ms. Kroeger stated that it was her desire to see the Woodburns become the legal custodians of Julie.
Although Ms. Bever cooperated with CSB and completed all of her case plan objectives, we believe that the facts presented aptly demonstrate that Ms. Bever is not a suitable parent for Julie at this time, as such placement would be detrimental to the child. After a thorough review of the record, we conclude that it was not against the manifest weight of the evidence for the trial court to find Ms. Bever to be an unsuitable parent, and, accordingly, Ms. Bever has not indicated any error in awarding custody to the Woodburns. Therefore, Ms. Bever's second assignment of error is overruled.
 III.
Ms. Bever's assignments of errors are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BAIRD, J., SLABY, J. CONCUR.